UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 22-cv-21332-MARTINEZ/BECERRA

J.F.,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Defendant, Carnival Corporation, moves for complete summary judgment on Plaintiff's two-count amended complaint, [ECF No. 11], under Federal Rule of Civil Procedure 56(a).

# TABLE OF CONTENTS

Introduction .................................................................................................................................... 3

Background .................................................................................................................................... 4

I.       Sexual Assault.................................................................................................................... 4

II.      Fight .................................................................................................................................. 6

Memorandum of Law .................................................................................................................... 6

    Standards of Governing Law ................................................................................................. 6

I.       Summary judgment standard .............................................................................................. 6

II.      Applicable negligence principles of general maritime law............................................... 7

      Arguments............................................................................................................................ 8

I.       Lack of foreseeability defeats all of Plaintiff's claims. .................................................... 8

    A.   Foreseeability of the crimes should be determined by the Court. ................................... 8

    B.   Specific criminal acts of cruise ship passengers are generally unforeseeable. ................ 9

    C.   The sexual assault was unforeseeable. ............................................................................ 10

    D.   The fight was also unforeseeable. ................................................................................... 14

II.      Plaintiff's vicarious liability claims are fatally flawed on three grounds. ..................... 16

    A.   Plaintiff fails to identify a negligent employee. ............................................................. 16

    B.   Even if an employee was negligent, there was no proximate cause. ............................. 17

    C.   There is no admissible evidence supporting Jesus was nineteen years old.................... 17

Conclusion................................................................................................................................... 19

Case No. 22-cv-21332-JEM

## INTRODUCTION

Plaintiff is a female who, at fifteen years old, vacationed onboard a Carnival cruise ship with her family. After spending an unproblematic evening in a large group of fellow teenagers, Plaintiff alleges she went with three boys to one of their staterooms. She used the restroom in his stateroom, and when she exited the restroom, one boy locked the door before she was suddenly sexually assaulted. In this action, Plaintiff sues Carnival under various negligent security theories and for vicarious liability arising from Carnival's crewmembers' alleged failure to intervene with or prevent the sexual assault.

A few days after the sexual assault, during a late night, Plaintiff engaged in a fistfight with a girl of approximately the same age. They had a dispute because each threw ice water on the other. Plaintiff suffered a black eye and some scrapes and bruises; she required no medical attention for her fight-related injuries. In addition to the claims arising from the sexual assault, Plaintiff is suing Carnival for claims arising from the fight under the same theories of liability.

Summary judgment should be granted on all claims. For Carnival to be liable for a passenger-on-passenger attack, the specific attack must be reasonably foreseeable. Here, however, neither the sexual assault nor fight were reasonably foreseeable.

As to the sexual assault, Plaintiff repeatedly testified that the three boys were normal and unassuming until they were in the stateroom. She did not feel unsafe until they were locked behind closed doors, and she admitted there was no indication an assault would occur until it did. Accordingly, Carnival could not reasonably foresee the attack on Plaintiff in the stateroom. Because of the lack of foreseeability, summary judgment should be granted on the claims against Carnival that arise from the sexual assault.

The same legal principles apply to the fight. Although there is some variation in their accounts, all witnesses testified that the fight was sudden. Cases that analyze such sudden altercations on cruise ships consistently conclude that the fights are presumptively unforeseeable; thus, the shipowner cannot be liable for failing to protect against a fight absent some special circumstance that made the fight foreseeable. Here, there is no evidence to suggest Carnival should have foreseen Plaintiff fighting another passenger, which means summary judgment is also appropriate on the fight-related claims.

Plaintiff's vicarious liability claims cannot succeed for at least three reasons. First, Plaintiff fails to identify a crewmember who breached their duty of care. Absent a specific identification, a

cruise line cannot be vicariously liable for a crewmember's negligence. Second, for the same reasons why the sexual assault and fight were not foreseeable to Carnival, they were not foreseeable to any particular employee. Accordingly, the vicarious liability claims fail on the same duty and proximate causation grounds as the direct liability claims. And third, Plaintiff alleges that one of the three boys (Jesus) was nineteen years old and, as such, should not have been permitted to enter the onboard teenage lounge, Club O2. But Plaintiff relies on speculation to support this claim. No one has been able to identify Jesus, much less determine his age, despite concerted efforts by the parties. At this stage, such speculation regarding Jesus and his age are insufficient to defeat summary judgment. For these three reasons, summary judgment is appropriate on Plaintiff's vicarious liability theories.

Plaintiff brings a two-count complaint in which she raises direct and vicarious liability claims for both the sexual assault and the fight. Each claim is fatally flawed due to a lack of foreseeability. The Court could dismiss this case on only foreseeability grounds. But, in addition to the foreseeability issues, the vicarious liability claims fail for two other reasons: first, Plaintiff cannot identify a negligent employee and, second, she relies on inadmissible speculation regarding Jesus. For all these reasons, the Court should grant complete summary judgment in favor of Carnival.

## BACKGROUND

Plaintiff was a fifteen-year-old passenger on the *Carnival Horizon* in August 2019. [Defendant's Statement of Material Facts, ¶¶ 1–2, ¶ 5]. She claims she was sexually assaulted by three boys on August 28: Zion Emery, Daniel Prianti, and an unidentified boy named Jesus. [¶ 3, ¶ 79]. Three days after the sexual assault, Plaintiff was involved in a fight with another teenaged passenger, Sariyah Murray. [¶ 4]. Plaintiff brings claims against Carnival for its alleged negligence in failing to prevent both incidents. [ECF No. 11].

### I. Sexual Assault

Plaintiff met the three alleged sexual assailants in the Club O2 lounge, a club on Deck 4 for persons aged fifteen through seventeen. [¶¶ 6–7, ¶ 105]. Plaintiff had no issues with the boys during the first three days of the cruise. [¶ 8]. On August 27, Plaintiff went to Club O2 and stayed there until activities closed. [¶ 9]. She did not interact with the three boys while in Club O2 that day and had no issues while there. [¶¶ 10–11]. After Club O2 closed, Plaintiff walked around the ship with a group of teenagers, which did not initially include the three boys. [¶ 12].

MASE SEITZ BRIGGS

Around midnight, on Deck 12, Plaintiff met Zion, Daniel, and Jesus while in the group. [¶ 13]. Everyone was just sitting and talking; no one did anything to make Plaintiff feel unsafe. [¶¶ 14–15]. When the group split up, Plaintiff went with Zion, Daniel, Jesus, and two others to get pizza. [¶ 16]. There were no issues while the group of six was eating. [¶ 17]. Plaintiff then realized that it was almost 1:00 AM, which meant she had to check in with her parents. [¶ 18]. The group offered to accompany Plaintiff to her stateroom, but Zion asked to first stop by his stateroom to get a phone charger. [¶ 19]. Plaintiff felt safe during the entire cruise up to this point, and the boys posed no cause for concern. [¶¶ 20–22].

Upon reaching Zion's stateroom on Deck 6, Plaintiff followed Zion inside to grab a tissue from the restroom, and then Daniel and Jesus followed Plaintiff inside. [¶ 23, ¶ 106]. Upon exiting the restroom, Plaintiff was sexually assaulted. [¶¶ 24–34]. The incident lasted for approximately ten minutes. [¶ 35].

In the days after, Plaintiff did not report the incident or express concern to her parents, Carnival, or the Miami-Dade police. [¶¶ 36–39]. One or two weeks after the cruise, Plaintiff told her cousin, and eventually Plaintiff's mother was told. [¶ 40]. Shortly after, Plaintiff received medical attention and reported the incident to Toronto Police, who relayed the allegations to the Miami-Dade Police Department. [¶¶ 41–42]. Miami-Dade Police informed Carnival of the allegations, and Carnival provided the police with the information in its possession regarding Plaintiff, none of which was related to the sexual assault since she did not report it to Carnival. [¶¶ 43–50]. On January 2, 2022, Miami-Dade Police provided Carnival with a list of suspects. [¶ 51].

Carnival was able to identify Zion Emery and Daniel Prianti but not Jesus. [¶¶ 51–52, ¶ 79]. Zion was seventeen years old at the time of the incident. [¶ 53]. He describes a few inconsequential conversations with Plaintiff in Club 02 during the initial days of the cruise. [¶¶ 54–55]. Then, on August 29, Zion testified that he and Plaintiff engaged in consensual oral sex in his stateroom after Plaintiff expressed she had a crush on him. [¶¶ 56–63]. According to Zion, they did not interact after she left his stateroom on August 29. [¶¶ 64–66].

Like Zion, Daniel Prianti was seventeen years old on the cruise and went to Club 02 each day. [¶¶ 67–68]. Daniel and Zion became close friends on the cruise, even to the point where Zion told Daniel about his sexual interaction with Plaintiff. [¶¶ 70–71]. Daniel met Plaintiff in Club 02 earlier in the cruise and said he had only a few minor interactions with her. [¶¶ 72–75].

Plaintiff identified Jesus as Hispanic and with dark-brown curly hair. [¶ 77]. She believes he was nineteen years old because he tried to enter Club O2 in a sneaky manner. [¶ 78]. Other than those characteristics, however, Plaintiff has no identifying information for Jesus. [¶ 76]. No one onboard with a registered name of "Jesus" matched the description provided by Plaintiff. [¶ 79].

## II. Fight

Three days after the sexual assault, Plaintiff engaged in a fight with Sariyah Murray, who was also fifteen years old at the time. [¶ 81, ¶ 91]. Plaintiff and Murray met on the first night of the cruise and interacted three or four times during the first few days, mostly conversing about boys. [¶ 80, ¶¶ 92–94]. They had no issues with each other until August 30. [¶ 85, ¶ 95]. On that day, during the hot afternoon, Murray was with a group of girls that were "playing around" by putting ice down other teenagers' shirts, including Plaintiff's shirt. [¶ 96]. Later, while on Deck 12, Plaintiff confronted Murray regarding the ice incident and threw a cup of water at Murray in retaliation. [¶ 87, ¶¶ 97–99]. The group then migrated to a different part of Deck 12, where the fight took place. [¶¶ 88–89, ¶¶ 100–03 ¶ 107]. The fight lasted for approximately twenty seconds before Plaintiff was pulled off Murray. [¶ 82, ¶ 84]. Plaintiff suffered a black eye and some scrapes and bruises from the fight, none of which required medical attention. [¶ 90].

## MEMORANDUM OF LAW
## Standards of Governing Law

### I. Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). "[S]ome alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

After Carnival demonstrates a lack of evidence in favor of Plaintiff on issues for which Plaintiff bears the burden of proof, Plaintiff must affirmatively demonstrate a genuine factual dispute to avoid summary judgment. *See Info. Sys. & Network Corp. v. City of Atlanta*, 281 F.3d 1220, 1225 (11th Cir. 2002). Plaintiff may not rely on the pleadings or mere denials of arguments or allegations to show an issue of fact; rather, Plaintiff must adduce some evidence showing a material fact is disputable. *See Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317,

324 (1986). The absence of such evidence presents no triable issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986). In other words, "a complete failure of proof . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23. And there is no requirement that Carnival "support its motion with affidavits or other similar materials *negating*" Plaintiff's claims since she will bear the burden of proof at trial. *See id*. at 323 (emphasis in original).

**II.      Applicable negligence principles of general maritime law**

General maritime law applies in cases, such as this one, that allege torts in navigable waters. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989). General maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986). In addition to traditional common-law rules, federal courts in admiralty can use state law to supplement maritime law to the extent that state law does not conflict with established federal maritime law. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 451–52 (1994).

Under general maritime law, to establish direct negligence for premises liability, Plaintiff has the burden to prove four elements: (1) Carnival had a duty to protect her from a particular injury; (2) Carnival breached that duty; (3) Carnival's breach actually and proximately caused Plaintiff's injury; and (4) Plaintiff suffered actual harm. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

The first and third elements are dispositive in this case. As to the first element, Carnival owes its passengers a duty of "ordinary reasonable care under the circumstances," which is limited to foreseeable dangers. *See Keefe*, 867 F.2d at 1322; *Fuentes v. Classica Cruise Operator Ltd., Inc.*, 32 F.4th 1311, 1317 (11th Cir. 2022). Regarding the third element, federal courts in admiralty are often "guided by 'the extensive body of state law applying proximate causation requirements and from treatises and other scholarly sources.'" *In re Complaint of Royal Caribbean Cruises, Ltd.*, 991 F. Supp. 2d 1171, 1183 (S.D. Fla. 2013) (quoting *Exxon Co. U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839 (1996)). Ultimately, this case turns on duty and proximate cause because the claims arise from unforeseeable criminal acts of third parties, which implicates the superseding cause doctrine.

**Arguments**

**I.      Lack of foreseeability defeats all of Plaintiff's claims.**

Carnival can be liable for a passenger's criminal attack on another passenger only if the specific criminal act was reasonably foreseeable. Plaintiff's own testimony, however, shows the sexual assault was unforeseeable until she and the assailants were locked in a stateroom, behind closed doors. Because the sexual assault was unforeseeable to Carnival, it was a superseding act that rises to a superseding cause, which defeats liability for negligent security and failure to warn.

The same foreseeability principles apply to the claims arising from the fight. Plaintiff and Murray engaged in a fight shortly after Plaintiff dumped ice water on Murray. To the extent Carnival can even be negligent for injuries that arise from Plaintiff's own intentional tort inflicted on another, Carnival's negligence, if any, cannot be a proximate cause because the fight was not foreseeable. Therefore, summary judgment should be granted on each claim against Carnival.

**A.      Foreseeability of the crimes should be determined by the Court.**

Both criminal acts here—the alleged sexual assault and the fight—were unforeseeable intervening events that rise to superseding causes. Intentional torts and illegal acts of third parties are generally deemed unforeseeable as a matter of law. *See Wiegand v. Royal Caribbean Cruises*, No. 21-12506, 2023 WL 4445948, *5 (11th Cir. July 11, 2023) (citing *Decker v. Gibson Prod. Co. of Albany*, 679 F.2d 212, 215 (11th Cir. 1982)). When the record is devoid of evidence to suggest reasonable foreseeability of a specific attack, the Court should grant summary judgment on both the duty and causation elements of a plaintiff's negligence claim. *See Fuentes*, 32 F.4th at 1317–20.

In terms of duty, Carnival must protect against or warn of a passenger-on-passenger attack only when Carnival or its employees could "reasonably apprehend the danger such that the attack was foreseeable." *Fuentes*, 32 F.4th at 1317; *see also* Restatement (Second) of Torts § 344, cmt. f ("Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur."). And, as a corollary, it is not within a shipowner's duty to deter unforeseeable criminal acts, as such deterrence is within the realm of criminal law and not tort. *See* Restatement (Third) of Torts: Physical and Emotional Harm § 30, cmt. b, *cited in* 57A Am. Jur. 2d Negligence § 564 (May 2023 update) ("Deterrence, it is true, can be obtained by criminal and regulatory systems, but those devices remain outside the tort system. From a corrective-justice

perspective, a merely serendipitous causal connection between the tortious aspect of the actor's conduct and the other's harm provides little reason for requiring the defendant to correct for that which has been wrongfully taken from the plaintiff.").

In addition to duty, foreseeability can also defeat the causation element. The intervening-act and superseding-cause doctrine "relieve[s] the defendant of any liability" when an intentional tort or crime is "so unusual, extraordinary, or bizarre" that the defendant's negligence, if any, could not be a proximate cause of the injury. *See Colon v. Twitter, Inc.*, 14 F.4th 1213, 1224 (11th Cir. 2021) (interpreting Florida law). Generally, third-party criminal acts are deemed to break the chain of causation between a shipowner's negligence and the injury suffered. *See Wiegand*, 2023 WL 4445948 at *4–5 (federal maritime law). A shipowner "providing the occasion" for another's crime is insufficient for liability; rather, the shipowner's negligence must "set in motion a chain of events culminating in injury to the plaintiff" for proximate cause to exist. *See Worthington v. U.S.*, 21 F.3d 399, 405 (11th Cir. 1994) (Florida law) (citations omitted).

Foreseeability of a criminal act, as to both duty and proximate cause, is generally for the Court to decide as a matter of law when the material facts are uncontroverted. *See, e.g.*, *Fuentes*, 32 F.4th at 1318; *see also Roberts v. Shop & Go, Inc.*, 502 So. 2d 915, 917 (Fla. 2d DCA 1986) (compiling cases where the foreseeability of a criminal intervening cause is determined as a matter of law because "the intervening act [was] merely 'possible' rather than 'probable'"). When a plaintiff relies on generalities, conjecture, or mere possibilities to support foreseeability, the Court should grant summary judgment. *See In re Complaint of Royal Caribbean Cruises, Ltd.*, 991 F. Supp. 2d at 1183 ("A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. . . . Because mere possibility based on speculation is not enough, the Court concludes that [plaintiff] cannot establish proximate cause as a matter of law.").

**B.    Specific criminal acts of cruise ship passengers are generally unforeseeable.**

The Eleventh Circuit recently clarified the foreseeability inquiry for the duties of a cruise ship owner as to the criminal acts of its passengers. *See Fuentes*, 32 F.4th at 1317–18. The plaintiff in *Fuentes* and another passenger had a verbal altercation one night, and then the other passenger attacked Mr. Fuentes while disembarking the next day. *See id.* at 1315–16. Mr. Fuentes was "blind-sided" by the "spur of the moment" attack. *See id.* at 1319.

9

MASE SEITZ BRIGGS

Like here, the plaintiff in *Fuentes* brought claims against the cruise line for negligent security and failure to warn. *See id.* at 1316. The district court granted summary judgment in favor of the cruise line due to a lack of foreseeability. On appeal, the plaintiff pointed to other cases where fights occurred in cruise ship crowds to argue that the cruise line knew of the dangers or, at a minimum, there was an issue of fact as to the foreseeability of fights occurring in large groups. *See id.* at 1318–20.

Even if there was an issue of fact in *Fuentes*, the court concluded such a dispute was immaterial to liability because the "specific danger" must be foreseeable. *See id.* at 1319. The unanimous Eleventh Circuit panel rejected the plaintiff's argument because there was no evidence that the cruise line could reasonably foresee the actual attack on Mr. Fuentes. Circuit Judge Jordan criticized the plaintiff's proffered foreseeability framework as "too high a level of generality and ignor[ing] too many variables." *Id.* at 1317–18 (quoting *Keefe*, 867 F.3d at 1322) ("Because a cruise line is not 'an insurer' of its passengers' safety, the foreseeability determination must have some connection to the events that gave rise to the negligence claim.").

When analyzing a passenger's criminal attack on another passenger, the foreseeability inquiry requires specificity. The *Fuentes* court opined that plaintiffs raising negligent security and failure to warn claims against cruise lines for criminal acts of other passengers cannot "'avoid summary judgment on some generalized theory of foreseeability that is divorced from the particular events in question.'" *Id.* at 1318 (citations omitted). Rather, plaintiffs must offer evidence that would make it foreseeable that the plaintiff would suffer the "*particular* injury" alleged due to another passenger posing a "specific danger." *Id.* at 1318–19 (citing *Chaparro*, 693 F.3d at 1336) (emphasis added in the opinion). Because the cruise line could not reasonably foresee the specific attack on Mr. Fuentes, summary judgment was affirmed.

Like *Fuentes*, Plaintiff's theories of liability sound in negligent security and negligent failure to warn. Accordingly, the holding in *Fuentes* is binding here: Plaintiff must show that the specific crimes were foreseeable to avoid summary judgment. For both of Plaintiff's claims, however, the specific criminal acts were unforeseeable to Carnival.

      C.      **The sexual assault was unforeseeable.**

Pursuant to *Fuentes*, the following should be the inquiry to determine if the sexual assault on Plaintiff was foreseeable: could Carnival reasonably apprehend that Plaintiff would be sexually assaulted in the stateroom before Plaintiff entered the stateroom?

The three boys posed no apparent danger to Plaintiff until she was locked in the stateroom. Plaintiff testified that she knew the boys since the first day of the cruise; they had never made her feel unsafe or uncomfortable during those early days. [Plaintiff's Deposition, ECF No. 87-1, 57:5–14, 69:8–72:19]. On the fourth night, Plaintiff spent time with them near the back of the ship in a lounge area among a group of between ten and twenty teenagers. [*Id.* at 78:6–22, 79:8–14]. Everyone was just casually sitting and talking. [*Id.* at 79:16–17]. No one in the group did anything to make Plaintiff feel unsafe. [*Id.* at 79:21–23]. Eventually, at around midnight, the group split up; Plaintiff went with the three boys, an unknown female, and another boy named Jaden to get pizza on Deck 12 and walk around the ship. [*Id.* at 80:1–5, 82:2–7].

Plaintiff repeatedly reiterated that there were no safety concerns while getting pizza and walking the corridors. [*Id.* at 82:10–15, 84:21–85:5, 116:2–5]. Then, sometime after midnight but before 1:00 AM, Plaintiff told the group that it was near her curfew and that she was going to check in with her parents. [*Id.* at 82:17–19]. The group said they would accompany Plaintiff, but Zion wanted to stop by his stateroom to grab a phone charger. [*Id.* at 82:19–23]. Upon reaching Zion's stateroom, Plaintiff freely and voluntarily followed Zion inside to grab a tissue from the restroom, and the other two boys entered behind Plaintiff. [*Id.* at 86:18–23]. After Plaintiff exited the restroom, she saw Daniel lock the door while the other two boys were near the bed. [p. 88:19–89:10]. It was only at this point that Plaintiff felt unsafe. [*Id.* at 84:24–85:2]. At no point prior did any of the boys attempt to touch her, kiss her, or otherwise act inappropriately. [*Id.* at 89:25–90:4].

Carnival could not reasonably apprehend that they were about to attack Plaintiff in the stateroom. As Plaintiff testified, there were no apparent concerns in the ship's public areas while she was in Club 02 on Deck 4, lounging and eating pizza on Deck 12, or walking the ship's corridors to Zion's stateroom on Deck 6. The assailants were not an apparent dangerous condition until they were in the stateroom. Thus, even upon viewing all evidence in a light most favorable to Plaintiff (i.e., believing every word of her story and rejecting the alleged assailants' versions), Carnival could not know that the boys posed a danger to Plaintiff until it was too late to intervene. The attack was an unforeseeable superseding event that cuts off any of Carnival's potential negligence from being a proximate cause of Plaintiff's injuries.

A near-identical issue arose in *H.S. by and through R.S. v. Carnival Corp.*, 727 Fed. App'x 1003 (11th Cir. 2018) ("*H.S.*"). The plaintiff in *H.S.* was a fourteen-year-old girl at the time of her cruise, and she was allegedly sexually assaulted in a stateroom by two teenaged boys after they all

left Club 02. *See id.* at 1004. Like this case, the plaintiff met and had spent significant time with the alleged assailants in Club 02 before the alleged assault. But unlike this case, the plaintiff alleged that she and the assailants were intoxicated and that there were repeated sexual acts—which the plaintiff resisted—in front of Carnival employees. *See id.* In response to a Rule 12(b)(6) motion, the plaintiff argued that these alleged facts were sufficient to put Carnival on notice that the assailants posed a danger and for a jury to conclude that Carnival was liable for failing to intervene, but the district and appellate courts disagreed. *See id.* at 1005–06.

The Eleventh Circuit held that the plaintiff failed to allege facts sufficient for Carnival to be "aware of teenage boys sexually assaulting teenage girls on its vessels or, more specifically, that teenage girls were leaving the youth nightclub, visiting peers' staterooms unchaperoned, and being sexually assaulted." *Id.* at 1006. Carnival could not reasonably expect that the plaintiff would be assaulted simply because Carnival employees saw a teenage boy attempt to remove the plaintiff's clothing or digitally penetrate her within Club 02. *See id.* at 1004. In other words, as a matter of law, raging teenage hormones do not imply that a rape is about to occur, even when a teenaged boy's advances are one-sided and rejected. Without facts to support that Carnival could reasonably foresee actual violence occurring in the stateroom, the *H.S.* plaintiff failed to state a claim.

The same rationale applies here—in fact, within the context of foreseeability, the alleged facts were far worse in *H.S.* than they are here. First, there is no evidence in this case that the three boys were inappropriately touching J.F. in Club 02 like the alleged assailants did in *H.S.* And second, there is no underage drinking issue here.

Like *H.S.*, though, even if Carnival breached a duty to warn or had a duty to have superior security onboard, such breaches could not proximately cause Plaintiff's sexual assault. More security would not have altered the outcome here. Carnival employs a multitude of techniques to minimize sexual assaults—such as the Eyes and Ears policy, pre-boarding screening for sexual predators, training employees to identify sexual predation behavior, implementing a Security Officer academy, and utilizing a sophisticated roving patrol system—and its sexual assault policies were audited and certified by the Rape, Abuse & Incest National Network (RAINN) at the time of the incident. [Defendant's Statement of Material Facts, ¶¶ 110–120]. But Carnival cannot reasonably intrude on passengers' privacy in their staterooms, so Carnival could not have prevented the alleged sexual assault. *See Brown v. NCL (Bahamas) Ltd.*, Case No. 15-21732-CIV-

LENARD/Goodman, 2016 WL 8716482, *7–8 (S.D. Fla. Oct. 13, 2016) (concluding assault by another passenger in a stateroom to be unforeseeable to the cruise line as a matter of law because "the first time [plaintiff] felt threatened by [the assailant was] when he pulled her down onto his bed in his cabin").

*Brown* is similar in terms of foreseeability: an assault occurred within the privacy of a stateroom when no one (i.e., the plaintiff or the cruise line) could foresee that the assault was about to occur. The plaintiff in *Brown* was returning to her stateroom when she encountered an intoxicated young man, Dante, who had no shirt or shoes and was locked out of his room. *See id.* at *1. Ms. Brown offered Dante some food and small talk; she "did not feel threatened by him" while in the hallway. Soon, though, a security guard approached them and said to quiet down because a noise complaint had been lodged. Ms. Brown responded that she did not know Dante and she was merely helping him because he was locked out. The security guard left to get a key to Dante's room and said they should wait inside Ms. Brown's room until he came back. Eventually, the security guard returned to unlock Dante's room but refused to help Ms. Brown escort Dante. Upon reentering her room, Ms. Brown found Dante in her bed. She successfully pulled him up and escorted him back to his stateroom without incident. *See id.* at *2–3.

The plaintiff in *Brown* never felt threatened by Dante until they were in his stateroom. When she dropped him off in his own bed, he pulled her down on top of him. Ms. Brown helped herself up, but Dante stood up and lifted her off the ground in a bear hug. She fell backward and crashed into a cabinet. *See id.* at *3.

Ms. Brown sued the cruise line for failing to intervene before Dante assaulted her. The *Brown* court, however, held the cruise line could not foresee the assault because the "plaintiff repeatedly testified that she did not initially feel threatened by Dante and that the first time she felt threatened by Dante is when he pulled her down onto his bed in his cabin." *Id.* at *7. Because Dante was not a safety concern until they were in his room, the cruise line could not "be held liable for Plaintiff's injuries on the theory that Dante's assault was foreseeable." *Id.* at *8 (citing *Colavito v. Gonzalez*, 1983 A.M.C. 1378, 1381–82 (S.D. Tex. 1981)).

Like *Brown*, the first time Plaintiff felt threatened was when she was in Zion's stateroom. This fact renders the assault unforeseeable to Carnival because Carnival cannot reasonably watch or listen to what is happening behind closed doors. Hypothetically, Carnival could have had 200 of the world's best security officers onboard, but none would have witnessed the assault on Plaintiff

and had a chance to intervene. Thus, assuming arguendo that Carnival's security was negligent, the negligence could not be a proximate cause of the sexual assault because Carnival cannot reasonably post security guards or CCTV cameras within passengers' staterooms.

Liability against Carnival requires foreseeability that the boys were a threat before they entered the stateroom. But the boys did nothing in public to indicate that they were about to attack Plaintiff. Due to a lack of reasonable foreseeability, summary judgment is appropriate on Plaintiff's claims against Carnival for its alleged negligence.

**D.     The fight was also unforeseeable.**

Carnival could not reasonably apprehend that Plaintiff and Murray would fight before Plaintiff threw ice water on Murray. Plaintiff testified that she met Murray on the first day of the cruise and had no issues with her until their fight many days later. [ECF No. 87-1 at 123:22–25]. Thus, like the sexual assault, Plaintiff's testimony shows that the fight was unforeseeable. Because Carnival could not reasonably foresee violence before the fight erupted, it cannot be liable for the injuries suffered by Plaintiff in the fight (a black eye, scrapes, and bruises).

CCTV footage and a passenger's cell phone captured the fight. *See Wiegand*, 2023 WL 4445948 at *6 (explaining that there is no genuine dispute of material fact when video supports only one version of events). The videos show Plaintiff punching Murray and receiving punches for approximately twenty seconds before Plaintiff was pulled off Murray. [ECF No. 88, Exhibits 12 and 13]. Plaintiff claims she suffered a black eye and some cuts and bruises, none of which required medical attention. [ECF No. 87-1 at 148:9–15, 155:14–16].

According to Plaintiff, the incident started on Deck 12. Murray suddenly threw ice on Plaintiff, and then Plaintiff retaliated by throwing water on Murray. [*Id.* at 124:6–14]. Murray's group started to chase her around the outdoor deck. [*Id.* at 124:15–17]. Eventually, they caught up to Plaintiff, and then Plaintiff exchanged punches with Murray for about twenty seconds before other teenagers in the group separated them. [Exhibit 12 and 13].

Murray's account is slightly different from Plaintiff's version, but the material testimony is consistent. [ECF No. 87-8 at 16:6–22:12]. Murray conceded she was playing around and dropping ice down people's shirts, including Plaintiff's, who seemed to take it as the joke that it was. [*Id.* at 17:12–23]. Many hours later, however, while on a staircase, Plaintiff confronted Murray about the ice incident. [*Id.* at 16:6–17:11]. While yelling at Murray, Plaintiff dumped water on Murray as Plaintiff's friends recorded the incident. [*Id.* at 16:20–25, 20:18–21]. The group then

went from the staircase to the clubhouse on Deck 12, which took approximately thirty-five seconds. [*Id.* at 22:7–12, 48:16–19]. Plaintiff then attacked someone in Murray's group, and Murray responded by punching Plaintiff. [*Id.* at 22:1–24]. The fight proceeded and ended as depicted in the videos. [*Id.* at 35:15–36:4]

Although their versions have some variation, particularly as to when Plaintiff threw ice water on Murray, there is no dispute on the *material* facts. First, the combatants agree that Plaintiff threw a cup of ice or water on Murray while on the staircase. Second, both agree that the incident began just before the video started recording. And third, the fight indisputably took place on Deck 12 by the basketball courts (which, contrary to the facts alleged in the Amended Complaint, was not on Deck 4 in Club 02).

Ultimately, for summary judgment purposes, no matter which version of events is most favorable to Plaintiff, batteries like this incident are superseding events unless the specific attack is foreseeable. *See Fuentes*, 32 F.4th at 1317–18; *Brown*, 2016 WL 8716482 at *7–9; *Colavito*, 1983 A.M.C. at 1378–80. Plaintiff needs to provide some evidence to suggest that Carnival could foresee that Murray and Plaintiff were about to become violent—a mere verbal dispute is insufficient. *See Fuentes*, 32 F.4th at 1319 ("[A] verbal dispute does not provide actual notice that a physical assault is to follow. . . . Verbal disputes occur every day in various walks of life, but thankfully they do not always lead to violent altercations."). Based on the record, however, this entire incident (starting when Plaintiff threw water or ice on Murray) lasted only a few minutes and the fight itself was twenty seconds. Such quickness is insufficient for the fight to become foreseeable to Carnival.

If the fight actually happened in Club 02, as Plaintiff alleged in Paragraph 26 of the Amended Complaint, then there might be an issue of fact as to whether Carnival's employees should have intervened. But at 1:45 AM, in a near-empty area of the ship on an outdoor deck, Carnival's employees would have to be omniscient or omnipresent to get involved before the fight began. The law does not require Carnival's Security Officers to be everywhere all at once. Because it was not reasonably foreseeable that Murray (or Plaintiff) would become violent, summary judgment is appropriate on Plaintiff's claims against Carnival for its alleged negligence relating to the fight.

\* \* \*

As to passenger-on-passenger attacks, the duty and proximate cause elements require that the attacks were reasonably foreseeable for liability to lie against Carnival. Here, both the sexual assault and fight were unforeseeable. Due to the lack of foreseeability, the Court should grant summary judgment in favor of Carnival on Plaintiff's direct liability claims.

**II.      Plaintiff's vicarious liability claims are fatally flawed on three grounds.**

Vicarious liability under a respondeat superior theory requires the plaintiff to (1) identify a specific employee who breached their duty of care within the course and scope of their employment and (2) prove that the breach proximately caused the plaintiff's injuries. Here, Plaintiff claims Carnival's supervisory employees were negligent in monitoring Club 02 and, in particular, not preventing the allegedly overaged Jesus from entering the club. Plaintiff contends the supervisors' failures in monitoring Club 02 proximately caused both the sexual assault and the fight.

Plaintiff's vicarious liability claims fail on three grounds. *First*, Plaintiff fails to identify a specific employee who breached their duty of care. Because binding law requires such identification, Plaintiff's vicarious liability claims fail. *Second*, Plaintiff cannot show how a failure to supervise Club 02 could proximately cause a sexual assault to occur in a stateroom (two decks away) or a fight to erupt (eight decks away). Any negligence in supervising the club would be superseded by the intervening acts of the assailants and could not be a proximate cause of the sexual assault or fight. The *third* reason why Plaintiff's vicarious liability claims fail is that her whole theory relies on unfounded speculation about Jesus's age. Plaintiff repeatedly contends supervisory employees in Club 02 were negligent because they failed to recognize that Jesus was nineteen years old, i.e., older than the maximum age for Club 02. But no one has been able to identify Jesus despite a meticulous search by both parties. There is no admissible, non-speculative evidence to suggest that this mysterious assailant was older than seventeen years. Without admissible evidence, Plaintiff's vicarious liability claims fail for this third reason as well.

**A.      Plaintiff fails to identify a negligent employee.**

To establish vicarious liability, Plaintiff must identify a specific employee whose negligence caused the sexual assault or fight. *See Yusko v. NCL (Bahamas) Ltd.*, 4 F.4th 1164, 1169–71 (11th Cir. 2021). In the Amended Complaint, Plaintiff vaguely alleges that "supervisory crewmembers" were negligent and their negligence caused Plaintiff's injuries. *See* [ECF No. 11 at

15, ¶¶ 46–48]. Although labeled in terms of vicarious liability, the substance of many claims sound in direct negligence, as most allegations relate to negligent policies, procedures, and training. *See* [ECF No. 11, ¶ 46, subparagraphs (a), (g)–(k), (r)]. Such allegations do not state a claim for vicarious liability. *See Britt v. Carnival Corp.*, 580 F. Supp. 3d 1211, 1214–16 (S.D. Fla. 2021) (interpreting *Yusko*, 4 F.4th at 1167–71).

To the extent any allegations were sufficiently pled, discovery showed there was no negligent employee. Plaintiff cannot establish that any particular employee breached their duty of care to Plaintiff. Without specific identification, summary judgment is appropriate on Plaintiff's vicarious liability claims.

**B.  Even if an employee was negligent, there was no proximate cause.**

In addition to the lack of specific identification, the vicarious liability claims also fail for lack of foreseeability. The same foreseeability analysis for direct liability applies to vicarious liability: an employee's negligence cannot be the proximate cause of an injury if the injury was caused by an unforeseeable criminal act. Accordingly, for all the same reasons that Carnival could not foresee the sexual assault or fight, no Carnival employee could foresee them either.

In particular, no "supervisory employee" in Club 02, which is on Deck 4, could reasonably foresee that Plaintiff would be sexually assaulted in a stateroom on Deck 6 or engage in a fight on Deck 12. Like the direct liability claims against Carnival, foreseeability is required for vicarious liability. However, neither the sexual assault nor fight could be foreseeable to a Carnival employee in Club 02. Due to the lack of foreseeability, summary judgment is appropriate on the proximate cause element of Plaintiff's vicarious liability claims.

Notably, Plaintiff's vicarious liability claim partly relies on the mistaken allegation that the fight occurred in Club 02 despite the fight actually occurring on Deck 12. *See* [ECF No. 11, ¶ 46(q)]. If the fight was in Club 02, as alleged in the Amended Complaint, then summary judgment might not be appropriate because a Carnival employee would or arguably should have been present. But there is no dispute that the fight occurred many decks away from Club 02, which means the fight was unforeseeable to any employee in Club 02 and there could be no proximate cause arising from a Club 02 employee's failure to intervene.

**C.  There is no evidence supporting Jesus was nineteen years old.**

Plaintiff must rely on admissible evidence to defeat summary judgment. In support of her vicarious liability claim, however, Plaintiff relies only on speculation. She contends the Carnival

employee supervising Club 02 was negligent for failing to ensure Jesus did not enter Club 02 (because he was nineteen years old) and that the failure proximately caused the sexual assault. But there is no admissible evidence indicating Jesus was eighteen or older. Plaintiff simply assumes he was older because of how he acted, which is inadmissible speculation. Without admissible evidence, this theory of vicarious liability cannot succeed (to the extent that it otherwise could).

For purposes of summary judgment, it is not Carnival's burden to disprove Plaintiff's claims. *See Celotex Corp.*, 477 U.S. at 322–23. At this stage of litigation, Plaintiff cannot rely on mere assertions, conjecture, or speculation. *See, e.g.*, *Hinson v. Bias*, 927 F.3d 1103, 1115 (11th Cir. 2019). And Plaintiff's evidence must be reducible to admissible form to be considered in a response to a motion for summary judgment. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012).

Here, Plaintiff's only evidence to support Jesus's age is speculation. No one can identify Jesus. In discovery, Carnival diligently searched for every possible "Jesus" by scouring the ship's manifest and providing Plaintiff with passengers' pictures, but Carnival had little information to work with. Plaintiff could not provide his last name, room number, who his traveling companions were, or where he lives. She remembers no defining characteristics about his appearance except that he had a goatee. Plaintiff merely describes Jesus as a Hispanic boy with dark-brown and curly hair. [ECF No. 87-1 at 66:6–21]. She "believes" he was nineteen years old because he tried to "sneak" in the club by "just walk[ing] in" when the Carnival "staff member wouldn't be paying attention." [*Id.* at 66:22–67:6, 99:16]. She provides no other evidence to indicate Jesus was older than seventeen. (Notably, Plaintiff similarly believed Daniel Prianti was eighteen years old, [*Id.* at 99:17], but he was actually seventeen at the time. [ECF No. 87-7 at 4–5].)

There is no admissible, non-speculative evidence regarding Jesus's age. Ultimately, Plaintiff is guessing. Because such speculation and conjecture cannot be the basis for defeating summary judgment, this theory of vicarious liability also fails.

\* \* \*

Plaintiff's vicarious liability claims fail for three separate reasons: (1) she fails to identify an employee who breached a duty of care; (2) even if an employee breached a duty of care, such breach could not be a proximate cause because the sexual assault and fight were unforeseeable; and (3) Plaintiff's claims rely on unfounded speculation regarding Jesus's age. For all three reasons, the Court should grant summary judgment on Count II of the Amended Complaint.

MASE SEITZ BRIGGS

Case No. 22-cv-21332-JEM

## CONCLUSION

 Summary judgment should be granted on Count I, which contains direct negligence claims, because the sexual assault and fight were not reasonably foreseeable to Carnival. As to the vicarious liability claims in Count II, summary judgment is appropriate for the three reasons discussed in the preceding section.

 WHEREFORE, Defendant, Carnival Corporation, respectfully requests that the Court grant complete summary judgment on Plaintiff's two-count amended complaint, [ECF No. 11], under Federal Rule of Civil Procedure 56(a).

Respectfully submitted,

MASE SEITZ BRIGGS, P.A.
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile: (305) 377-0080

By: */s/ Tyler Rauh*
 WILLIAM R. SEITZ
 Florida Bar No. 73928
 wseitz@maselaw.com
 LAUREN N. CABEZA
 Florida Bar No. 1025668
 lcabeza@maselaw.com
 TYLER J. RAUH
 Florida Bar No. 1023404
 trauh@maselaw.com