UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 22-21332-CIV-MARTINEZ

J.F.,

    Plaintiff,

vs.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINES,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant Carnival Corporation d/b/a Carnival Cruise Line's Motion for Summary Judgment ("Defendant's Motion for Summary Judgment"), (ECF No. 93). The Court has reviewed Defendant's Motion for Summary Judgment and pertinent portions of the record and is otherwise fully advised of the premises. For the reasons set forth herein, Defendant's Motion for Summary Judgment is GRANTED.

**I.  BACKGROUND**

The following facts are undisputed unless otherwise noted. Where the facts are in dispute, they are taken in the light most favorable to Plaintiff, the non-movant.

This case arises out of an incident that occurred while Plaintiff was a passenger on the Carnival *Horizon* in August 2019. (ECF No. 94 at ¶ 1; ECF No. 114 at ¶ 1.) Plaintiff was sexually assaulted by two of three boys—Zion Emery, Daniel Prianti, and Jesus onboard the Carnival *Horizon* shortly after midnight during the morning of August 28, 2019. (ECF No. 94 at ¶ 3; ECF No. 114 at ¶ 3.) Defendant was never able to identify a passenger named "Jesus" matching

Plaintiff's description of him. (ECF No. 94 at ¶ 79; ECF No. 114 at ¶ 79.) As such, Jesus's last name, traveling companions, room number, and home city are unknown. (ECF No. 94 at ¶ 76; ECF No. 114 at ¶ 76.) Plaintiff identified Jesus as a Hispanic boy with dark-brown curly hair and a goatee, and believed he was nineteen years old because of how he tried to enter Club 02 in a sneaky manner. (ECF No. 94 at ¶¶ 77-78; ECF No. 114 at ¶¶ 77-78.) Plaintiff met Daniel and Zion on the first day of the cruise in Club 02, an activity group for passengers aged fifteen through seventeen. (ECF No. 94 at ¶¶ 6-7; ECF No. 114 at ¶¶ 6-7.) Plaintiff spent some time with Daniel and Zion in Club 02 during the first three days of the cruise. (ECF No. 94 at ¶ 8; ECF No. 114 at ¶ 8.) Plaintiff went to Club 02 during the evening of August 27 and stayed until the club's activities closed that night; she did not have any problems or feel unsafe while inside Club 02 that day. (ECF No. 94 at ¶¶ 9-10; ECF No. 114 at ¶¶ 9-10.) Plaintiff did not interact with Zion, Daniel, or Jesus in Club 02 on August 27. (ECF No. 94 at ¶ 11; ECF No. 114 at ¶ 11.)

After Plaintiff left Club 02 on August 27, she walked around the ship with a group of teenagers. (ECF No. 94 at ¶ 12; ECF No. 114 at ¶ 12.) Zion, Daniel, and Jesus joined the group on the Lido Deck in the lounge area just before midnight. (ECF No. 94 at ¶ 13; ECF No. 114 at ¶ 13.) The group was "just sitting and talking," and no one in the group did anything to make Plaintiff feel unsafe. (ECF No. 94 at ¶¶ 14-15; ECF No. 114 at ¶¶ 14-15.) When the group split up, Plaintiff went to get pizza with Zion, Daniel, Jesus, Jaden, and an unidentified female. (ECF No. 94 at ¶ 16; ECF No. 114 at ¶ 16.) Plaintiff felt safe and there were no problems while getting pizza. (ECF No. 94 at ¶ 17; ECF No. 114 at ¶ 17.) As the time approached 1:00 AM, Plaintiff told the group that she needed to go to her room to check in with her parents. (ECF No. 94 at ¶ 18; ECF No. 114 at ¶ 18.) The group offered to accompany Plaintiff to her room, but Zion asked that they stop by his room on the way to grab a phone charger. (ECF No. 94 at ¶ 19; ECF No. 114 at ¶ 19.) Upon reaching Zion's stateroom, Plaintiff followed Zion inside to get a tissue from his restroom, and

then Daniel and Jesus followed her inside. (ECF No. 94 at ¶ 23; ECF No. 114 at ¶ 23.) When Plaintiff exited the restroom, she saw Daniel lock the door while the other two boys were near a bed. (ECF No. 94 at ¶ 24; ECF No. 114 at ¶ 24.)

Plaintiff felt safe on the ship from the moment the cruise started until she was inside Zion's stateroom—none of the assailants had tried to kiss or touch Plaintiff in an inappropriate manner before they were in the stateroom. (ECF No. 94 at ¶¶ 20-21; ECF No. 114 at ¶¶ 20-21.) Plaintiff panicked when she realized the door was locked and tried to go toward the door to leave, but Jesus picked her up and put her on a bed. (ECF No. 94 at ¶ 26; ECF No. 114 at ¶ 26.) Jesus kissed Plaintiff and tried to force himself on her while she was pushing him and telling him to stop, Daniel took Plaintiff's pants off and penetrated her vaginally after Plaintiff told him to stop, and Zion penetrated her orally. (ECF No. 94 at ¶¶ 27, 29-30; ECF No. 114 at ¶¶ 27, 29-30.) Before anything else occurred, Plaintiff got up, grabbed her clothing, and left the cabin—no one attempted to stop her from leaving. (ECF No. 94 at ¶ 33; ECF No. 114 at ¶ 33.) Plaintiff did not report a sexual assault to Defendant during the cruise. (ECF No. 94 at ¶ 38; ECF No. 114 at ¶ 38.)

A few days after the sexual assault, Plaintiff was involved in a fistfight with another passenger, Sariyah Murray. (ECF No. 94 at ¶ 81; ECF No. 114 at ¶ 81.) Plaintiff and Sariyah had interacted with each other several times in Club 02 before the fight and had no issues with each other. (ECF No. 94 at ¶¶ 85, 92, 95; ECF No. 114 at ¶¶ 85, 92, 95.) The incident started when Sariyah threw a cup of ice at Plaintiff on the Lido Deck at the back of the ship, and Plaintiff retaliated by throwing a cup of water at Sariyah. (ECF No. 94 at ¶¶ 86-87; ECF No. 114 at ¶¶ 86-87.) After the water was thrown, Sariyah and other individuals started chasing Plaintiff. (ECF No. 94 at ¶ 88; ECF No. 114 at ¶ 88.) The fight occurred in the clubhouse game area, which was captured on video. (ECF No. 94 at ¶ 89; ECF No. 114 at ¶ 89.) Plaintiff suffered a black eye,

scrapes, cuts, and bruises from the fight, none of which required medical attention. (ECF No. 94 at ¶ 90; ECF No. 114 at ¶ 90.)

Plaintiff's Statement of Additional Material Facts highlights an incident where Zion was caught by Defendant's security personnel attempting to smuggle a bottle of an unauthorized alcoholic beverage, obtained during a port excursion, through an X-ray machine and onto the ship by hiding it under his clothing. (ECF No. 114 at ¶ 132.) However, the parties dispute whether this incident occurred before or after the sexual assault. (ECF No. 94 at ¶ 132; ECF No. 114 at ¶ 132.) Zion's grandmother was advised by Defendant's security officers that Zion's actions would be grounds for removing him from the vessel and sending him home, but instead he was allowed to remain on the cruise after receiving a warning to not engage in further misconduct. (ECF No. 94 at ¶ 134; ECF No. 114 at ¶ 134.)

Plaintiff also notes that during the three years prior to the sexual assault in this case, there were 102 fleetwide reports to Defendant of sexual assaults of various types on passengers. (ECF No. 114 at ¶ 139.) However, Defendant disputes Plaintiff's characterization of these reports as "sexual assaults of various types" because the list also includes allegations of groping and other unwanted touching, incest, incidents where a person could not recall what happened but may have been assaulted, incidents that began with consent but the consent was withdrawn, and some incidents where an allegation was retracted. (ECF No. 94 at ¶ 139.)

Plaintiff's Amended Complaint alleges one count of negligence for direct liability and one count of negligence for vicarious liability arising out of the sexual assault.[1] (ECF No. 11.)

---

[1] The negligence claims Plaintiff asserts against Defendant arise from the sexual assault. Plaintiff is not asserting a separate claim of negligence for the fight involving Sariyah Murray. Rather, Plaintiff asserts that the fight contributed to Plaintiff's damages arising from the sexual assault. (ECF Nos. 151, 152.)

II. **Motion for Summary Judgment**

Defendant moved for summary judgment on the grounds that the duty of care it owes to its passengers is ordinary reasonable care under the circumstances, which is limited to foreseeable dangers. (ECF No. 93.) It maintains that the sexual assault on Plaintiff was not foreseeable. (*Id.*) Defendant further argues that the lack of foreseeability defeats the causation element of negligence. (*Id.*) As to vicarious liability, Defendant moved for summary judgment on the grounds that (1) Plaintiff failed to identify a specific employee who breached their duty of care; (2) Plaintiff cannot show how a failure to supervise Club O2 could proximately cause a sexual assault to occur in a stateroom; and (3) her whole theory relies on unfounded speculation about Jesus's age. (*Id.*)

Plaintiff responded that Defendant's documentation regarding the 102 incident records, the majority of which occurred in passenger staterooms, can establish the general foreseeability of passenger-on-passenger sexual assaults on its vessels. (ECF No. 113.) Plaintiff further argues that Defendant is liable for negligence because it did not prohibit Zion from reboarding after he was caught attempting to bring alcohol onboard. (*Id.*) Plaintiff also argues Defendant is liable for negligence because it did not have enough security resources to prevent the sexual assault. (*Id.*)

In reply, Defendant maintains that the lack of reasonable foreseeability renders summary judgment appropriate on both the duty and causation elements of Plaintiff's negligence claims. (ECF No. 126.) In response to Plaintiff's position that increased security could have deterred the assault, Defendant argues that would require inference stacking. (*Id.*) Further, it did not have a legal duty to prohibit Zion from reboarding, the alcohol incident had no relevance to the sexual assault, as sexual assault is not naturally expected to occur after a teenager attempts to smuggle alcohol onboard, and this theory was not raised as a basis for liability in the amended complaint and, therefore, should be denied as an improper eleventh-hour allegation not traceable to the complaint. (*Id.*)

5

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment if "the depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , or other materials . . . show . . . that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. Rule 56 requires entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *accord Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London Subscribing to Certificate No. 154766 Under Cont. No. B0621MASRSWV15BND*, 766 F. App'x 795, 798 (11th Cir. 2019). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. When the moving party has carried its burden, the party opposing summary judgment must do more than show that there is "metaphysical doubt" as to any material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 586. Indeed, Rule 56 "requires the nonmoving party to go beyond the pleadings and, by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designate*

*specific facts showing that there is a genuine issue for trial.*" *Celotex Corp.*, 477 U.S. at 324 (emphasis added); *Kol B'Seder, Inc.*, 766 F. App'x at 798.

At summary judgment, courts are required to view the evidence and draw inferences in the light most favorable to the nonmovant. *See Matsushita Elec. Indus.*, 475 U.S. at 586; *Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988). "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant. *Chapman*, 861 F.2d at 1518. "However, an inference based on speculation and conjecture is not reasonable." *Id.* (citing *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *See Matsushita Elec. Indus.*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 270 (1968)).

## IV. DISCUSSION

### a. Count I – Negligence (Direct Liability)

This case is governed by principles of general maritime law, as the amended complaint asserts causes of action for torts occurring in navigable waters. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989). General maritime law implicates traditional common-law rules, modifications of those rules, and newly created rules. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-65 (1986). Federal courts in admiralty can supplement maritime law with state law to the extent the state law does not conflict. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 451–52 (1994).

To state a negligence claim under maritime law, a plaintiff must establish by the preponderance of the evidence that (1) the defendant had a duty of reasonable care; (2) the

defendant breached that duty; (3) the breach actually and proximately caused plaintiff's injury; and (4) the plaintiff suffered actual harm. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). Defendant owes a duty to exercise reasonable care under the circumstances towards passengers. This standard requires as a prerequisite to imposing liability that the carrier had actual or constructive notice of the injury-causing condition. *Keefe*, 867 F.2d at 1322.

### i. Lack of foreseeability

When the record is devoid of evidence to suggest reasonable foreseeability of a specific attack, the Court should grant summary judgment on both the duty and causation elements of a plaintiff's negligence claim. *Fuentes v. Classica Cruise Operator Ltd., Inc.*, 32 F.4th 1311, 1317 (11th Cir. 2022). Foreseeability of a criminal act, as to both duty and proximate cause, is generally for the Court to decide as a matter of law when the material facts are uncontroverted. Intentional torts and illegal acts of third parties are generally deemed unforeseeable as a matter of law. *See Wiegand v. Royal Caribbean Cruises*, No. 21-12506, 2023 WL 4445948, *5 (11th Cir. July 11, 2023) (citing *Decker v. Gibson Prod. Co. of Albany*, 679 F.2d 212, 215 (11th Cir. 1982)). When a plaintiff relies on generalities, conjecture, or mere possibilities to support foreseeability, the Court should grant summary judgment. *See In re Complaint of Royal Caribbean Cruises, Ltd.*, 991 F. Supp. 2d 1171, 1183 (S.D. Fla. 2013).

In *Fuentes*, a cruise ship passenger sued the cruise line for negligence arising from a physical assault by another passenger during a verbal dispute over attempted line-cutting during disembarkation. 32 F.4th at 1315. The injured passenger alleged that the cruise line was negligent because it failed to (a) reasonably and properly train security personnel; (b) have adequate security measures, including adequate security presence and surveillance cameras; (c) warn him of the danger of being physically assaulted while onboard the vessel; (d) promulgate and enforce policies and procedures designed to prevent passengers from physically assaulting other passengers; and

(e) exercise reasonable care under the circumstances. *Id.* at 1316. This Court granted summary judgment in favor of the cruise line, ruling that there was no evidence suggesting that it had actual or constructive notice of the risk of harm to someone like the plaintiff. *Id.*

The Eleventh Circuit Court of Appeals affirmed, noting that in determining the existence of a duty, a court must examine and weigh the probability of an accident, the potential extent of the injury, and the cost of adequate precautions. *Id.* at 1317. Further, the Eleventh Circuit found that plaintiff's foreseeability analysis was "described at too high a level of generality and ignore[d] too many variables." *Id.* Because a cruise line is not an insurer of its passengers' safety, the foreseeability determination must have some connection to the events that gave rise to the negligence claim. After all, a cruise line's duty is to protect its passengers from a *particular* injury. *Id.* (quoting *Chaparro*, 693 F.3d at 1336).

Like the plaintiff in *Fuentes*, Plaintiff's reliance in this case on the 102 fleetwide incident reports over the course of three years to establish constructive notice of the risk to Plaintiff is too high a level of generality that ignores too many variables. None of the incidents are substantially similar to the occurrence in question. *See Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988). Further, as noted above, in determining the existence of a duty, a court must examine and weigh the probability of an accident, the potential extent of the injury, and the cost of adequate precautions. *Fuentes* 32 F.4th at 1317. Plaintiff attempts to distinguish *Fuentes* from the present matter on the basis that there was only one additional violent altercation between passengers during disembarkation, which was different in kind from the assault on the plaintiff, while there were 102 "sexual assaults" between Defendant's passengers during the three-year period before the assault on Plaintiff. (ECF 113.) However, Plaintiff misses the emphasis in *Fuentes* on the importance of the particular facts of each case in the determination of whether a particular injury was foreseeable.

9

Here, Plaintiff lumps all 102 incidents into one category of "sexual assault" without further inquiry as to the particular events that gave rise to each incident.

In *H.S. v. Carnival Corporation*, 727 Fed. App'x. 1003 (11th Cir. 2018), the Eleventh Circuit affirmed this Court's decision that a cruise line could not be held liable for negligence resulting from a sexual assault on a minor female passenger that took place in a private stateroom. The plaintiff in that case was sexually assaulted in a male teenaged passenger's stateroom after the plaintiff drank alcohol provided by another underage passenger. *Id.* at 1004. Further, there was inappropriate contact between the passengers within Club 02 that plaintiff alleged emboldened the behavior that occurred outside of Club 02. *Id.* The facts of *H.S.* are much more egregious than the facts alleged here, yet H.S.'s claims were dismissed upon the defendant's motion to dismiss for failure to state a claim. *Id.* The Eleventh Circuit held that because the proximate cause of H.S.'s injury was an intervening criminal act by "a fellow passenger," the defendant could not be liable in negligence unless the "injury by its nature could have been reasonably anticipated or naturally expected to occur or reasonably foreseen in time [for defendant] to have prevented the injury." *Id.* (quoting *Bullock v. Tamiami Trail Tours, Inc.*, 266 F.2d 326, 331 (5th Cir. 1959) (internal quotation marks omitted). "H.S. failed to allege how the defendant could have foreseen from the teenagers' conduct in Club O2 that H.S. would visit E.H.'s stateroom, become intoxicated, and be sexually assaulted. H.S.'s allegations established instead that Carnival was obligated to supervise her inside Club O2." *Id.* at 1006. Plaintiff did not address this case or attempt to distinguish it. (ECF No. 113.)

Plaintiff relies upon *Chaparro v. Carnival Corporation*, 693 F.3d 1333 (11th Cir. 2012) in her response in opposition to Defendant's Motion for Summary Judgment, (ECF No. 113). In *Chaparro*, a cruise line employee suggested that a passenger visit Coki Beach during the vessel's stop at St. Thomas. *Id.* While visiting Coki Beach as suggested by the employee, the decedent was

caught in the crossfire of a gang related shooting at a gang member's funeral and was killed. The decedent's family sued the cruise line for negligence. *Id.* The cruise line moved to dismiss the complaint for failure to state a claim on the basis that the shooting and death were unforeseeable to it as a matter of law, which the trial court granted. *Id.* However, the Eleventh Circuit reversed the dismissal and held that foreseeability had been established at least for pleading purposes where the plaintiff had pled the cruise line's efforts to monitor crime in its ports of call, including St. Thomas and Coki Beach, the cruise line's consequent knowledge of the general frequency of gang related violence at Coki Beach, and the cruise line's actual or constructive knowledge of the gang member funeral leading to the shooting. *Id.* at 1336-37.

*Chaparro* is distinguishable from the present matter. First, *Chaparro* was dismissed on a motion to dismiss for failure to state a claim, whereas here the matter is before the court on a motion for summary judgment. The *Chaparro* court expressly acknowledged that the cruise line's argument for dismissal due to lack of foreseeability would more appropriately be addressed after discovery at summary judgment stage or at trial, rather than on a motion to dismiss. *Id.* at 1336. Further, in *Chaparro*, a cruise line employee recommended the activity that resulted in the passenger's death, and the plaintiff alleged that the cruise line generally knew of gang violence and public shootings in St. Thomas as well as Coki Beach's reputation for drug sales, theft, and gang violence. *Id.* Therefore, the allegations relating to the foreseeability of violence were specific to the injury-causing dangers and had some connection to the events that gave rise to the negligence claim such that the complaint contained enough facts to raise a reasonable expectation that discovery would reveal evidence of the defendant's liability. *Id.*

Here, however, Plaintiff has had the benefit of discovery and has failed to produce evidence that Defendant had knowledge of the specific dangers that caused Plaintiff's injury. Plaintiff relies upon the 102 fleetwide incident reports to establish the foreseeability of Plaintiff's injury but does

not explain how those reports rendered the particular conduct and particular harms reasonably foreseeable to Defendant such that it could have prevented the injury. The foreseeability inquiry cannot be "divorced from the particular events in question." *Fuentes*, 32 F.4th at 1317-18.

Plaintiff also relies upon *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1043 (11th Cir. 2019). Similarly to *Chaparro*, *K.T.* involved a motion to dismiss for failure to state a claim. 931 F.3d at 1043. The minor plaintiff in that case alleged that on the first night of the cruise, a group of nearly a dozen adult male passengers bought multiple alcoholic beverages for her in a public lounge and other public areas of the ship. *Id.* They plied her with enough alcohol that she became "highly intoxicated," "obviously drunk, disoriented, and unstable," and "obviously incapacitated." *Id.* The group of nearly a dozen men then steered her "to a cabin where they brutally assaulted and gang raped her." *Id.* She alleged that everything leading up to the assault and rape happened in the view of multiple cruise line employees, including those responsible for monitoring the ship's security cameras, yet the employees did nothing to stop the group of adult male passengers from buying alcohol for K.T., from getting her drunk, or from leading her away to a cabin while she was incapacitated. *Id.* The Eleventh Circuit reversed the trial court's dismissal of K.T.'s complaint, finding that it alleged sufficient facts at the motion to dismiss stage to support a cause of action for negligence. *Id.*

*K.T.* is similarly distinguishable from the present case. Again, that case involved the lower standard of a motion to dismiss rather than the summary judgment standard. *K.T.* merely held that the plaintiff's complaint alleged sufficient facts to support the causes of action asserted such that it should not have been dismissed at that early stage. *Id.* at 1046-47. Further, the complaint alleged that the cruise line had "actual knowledge of minors wrongfully being provided with or allowed access to alcohol, and then becoming the victim of assaults and batteries and sexual crimes" such that the foreseeability of the assault was specific to the injury-causing dangers and had some

connection to the events that gave rise to the negligence claim. *Id.* at 1044. In the present case, however, there was no similar indication to Defendant or Defendant's employees that Plaintiff was at risk of being sexually assaulted. Defendant did not have prior knowledge of the particular attack because the assailants posed no danger to Plaintiff until she was in the stateroom. Therefore, the lack of foreseeability defeats Plaintiff's claim that Defendant owed her a duty of care to protect her and warn her against the particular harm she suffered. Defendant only had a duty to protect against or warn of a passenger-on-passenger attack only when it or its employees could "reasonably apprehend the danger such that the attack was foreseeable." *Fuentes*, 32 F.4th at 1317.

The lack of foreseeability in this case also defeats the causation element of Plaintiff's negligence claims. When the record is devoid of evidence to suggest reasonable foreseeability of a specific attack, the Court should grant summary judgment on both the duty and causation elements of a plaintiff's negligence claim. *Fuentes*, 32 F.4th at 1317.

### b. Count II – Negligence (Vicarious Liability)

Defendant's Motion for Summary Judgment argues that Plaintiff's Count II for negligence under vicarious liability should also be dismissed because to establish vicarious liability, Plaintiff must identify a specific employee whose negligence caused the sexual assault. *See Yusko v. NCL (Bahamas) Ltd.*, 4 F.4th 1164, 1169-71 (11th Cir. 2021). Further, although labeled in terms of vicarious liability, the substance of Plainitff's vicarious liability claim sounds in direct negligence, as most allegations relate to negligent policies, procedures, and training. Such allegations do not state a claim for vicarious liability. *See Britt v. Carnival Corp.*, 580 F. Supp. 3d 1211, 1214-16 (S.D. Fla. 2021) (interpreting *Yusko*, 4 F.4th at 1167–71). Plaintiff did not respond to these arguments. In fact, Plaintiff's Response in Opposition is completely devoid of any mention of its vicarious liability cause of action. (ECF No. 113).

In further support of Defendant's argument for the dismissal of Count II, it states that even if any of Defendant's employees were negligent such that Defendant is vicariously responsible, this claim also fails for the same lack of foreseeability analysis discussed above. An employee's negligence cannot be the proximate cause of an injury if the injury was caused by an unforeseeable criminal act. *Fuentes* 32 F.4th at 1317.

Therefore, even drawing all reasonable inferences from the evidence in the light most favorable to Plaintiff, Defendant is entitled to judgment as a matter of law. Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (ECF No. 93) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant Carnival Corporation d/b/a Carnival Cruise Line and against Plaintiff J.F. All pending motions are **DENIED AS MOOT**, and this case is **CLOSED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 27 day of December, 2023.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Becerra
All Counsel of Record